UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

JAMES W. MURRAY ... )
... )
v. ... )  4:04-cv-98/4:01-cr-1
... )  *Edgar*
UNITED STATES OF AMERICA ... )

## MEMORANDUM

The defendant, James W. Murray ("Murray"), has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Court File No.1]. The Government opposes Murray's § 2255 motion. For the reasons which follow, the Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit and will be **DENIED**. Murray is not entitled to relief under § 2255.

## I.      Procedural Background

On January 10, 2001, a United States grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, returned a one-count indictment charging Murray with possession of cocaine base with intent to distribute. On May 23, 2001, a three-count superseding indictment was filed. Murray was charged in Count One with conspiracy to distribute in excess of 50 grams of cocaine base (crack), a schedule II controlled substance, in violation of 21 U.S.C. § 846. Count Two of the indictment charged Murray with knowingly carrying a firearm during and in relation to the drug trafficking crime alleged in Count One of the superseding indictment in violation of 18 U.S.C. § 924(c). Murray was charged in Count Three, with possession and intent to distribute in excess of 50 grams of a mixture or substance containing cocaine base (crack), a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

1

Murray exercised his right to a trial in this matter which began on July 11, 2001, in Winchester, Tennessee. However, after the government began to present its evidence, the defendant changed his mind and requested permission to enter a plea of guilty. The Court permitted Murray to plead guilty to all three counts of the superseding indictment without the benefit of a plea agreement.

On October 22, 2001, Murray was sentenced to a total term of 248 months imprisonment–188 months on each of Counts One and Three, to be served concurrently and a term of 60 months on Count Two to be served consecutively to the terms imposed in Counts One and Three. Murray pursued a direct appeal from the judgment of conviction. Murray's convictions were affirmed by the United States Court of Appeals for the Sixth Circuit. *See United States v. Murray*, 66 Fed.Appx. 600 (6th Cir. June 2, 2003)(unpublished decision), *available in* 2003 WL 21277340, *cert. denied*, 540 U.S. 974 (2003). Murray's § 2255 motion attacking the sufficiency of the evidence; sufficiency of the indictment; counsel's effectiveness; the Court's denial of his motion to withdraw his guilty plea; and the application of the obstruction of justice enhancement to his sentence was timely filed on or about October 22, 2004.

II.     **Standard of Review**

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not

entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S.

780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, Murray cannot use a § 2255 motion to litigate the issues that should have been presented and decided on direct appeal unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is demonstrated, *United States v. Frady*, 456 U.S. 152, 167-68 (1982), or Murray shows that he is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. at 622. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996).

### III.    Facts

The following pertinent facts are taken from the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 8.      On April 3, 1999, officers of the Franklin County, Tennessee, Sheriff's Office stopped defendant James W. Murray, Jr., for improper display of vehicle registration. When the officers ran his information through the dispatcher, they learned that his driver's license had been suspended and that he had outstanding warrants for his arrest in Franklin County. Upon searching the defendant's vehicle, officers found a plastic bag containing white powder believed to be cocaine hydrochloride, along with a **loaded Rossi .357 caliber revolver**. In the pocketbook of the vehicle's passenger, Kim Turrentine, officers located rolling papers and a bag of suspected marijuana stems. Mr. Murray also had in his possession **$11,920 in U.S. currency**. (Although the defendant is suspected to have possessed cocaine hydrochloride during the course of this incident, due to the amount of crack cocaine possessed on December 11, 2000, the cocaine hydrochloride would have no effect on the base offense level and, therefore, will not be considered in the calculations. Furthermore, although the $11,920 represents the proceeds of drug trafficking, were it considered proceeds from the sale of cocaine hydrochloride, it also would have no impact on the base level

offense level, due to the substantial quantity of crack cocaine the defendant possessed on December 11, 2000.[1]) (emphasis in original)

9.      Around 7:15 p.m. on December 11, 2000, James Murray Jr. caught a taxi cab in Nashville, Tennessee, and asked the driver (who was accompanied by a friend) to take him to Murfreesboro, Tennessee. Consistent with the cab company's policies, the driver requested that the defendant pay up-front for the fare because it would be so large. Mr. Murray paid $30 toward the approximate $60 fare.

10.     As the cab entered the Murfreesboro area, the driver asked the defendant which exit he wanted to take. The defendant asked that the driver continue to travel east on Interstate 24. Around this time, the cab driver noticed that Mr. Murray was fidgeting with something in the waistband of his pants. The driver became concerned and turned on the interior light of the cab, in an effort to determine what the defendant had concealed in his waistband area.

11.     When the cab driver reached Manchester, Tennessee, he advised the defendant that he needed to refuel the vehicle. The driver exited at exit number 110 and went to a nearby gasoline station. The driver entered the store, leaving his friend to pump the gasoline, and advised the store clerk to call police because he had a suspicious passenger in his cab. Officers from the Manchester Police Department responded to the scene and, after speaking with the cab driver, drew their weapons and asked the defendant to exit the cab. As the officers were performing a pat-down search of Mr. Murray, they noticed a foreign object just beneath the waistband of his pants. When they asked him to identify the object, he refused to answer. After asking a second time, the officers put the defendant on the ground and handcuffed him. They were then able to remove the object from his pants. They retrieved a brown paper bag with a rubber band around it. Inside the bag was a clear bag containing **289.2 grams of cocaine base "crack"** (laboratory tested) (emphasis in original).

12.     During the course of their investigation of James Murray, Drug Enforcement Administration (DEA) agents interviewed various individuals who are aware of his drug trafficking activities. Among these individuals were Willie Allgood and

---

[1]      $11,920 could represent the proceeds from the defendant's sale of 9.9 ounces (280 grams) of cocaine hydrochloride (given that an ounce of cocaine hydrochloride sells for between $800 and $1,200) or it could represent the proceeds from the defendant's sale of 7.95 ounces (225 grams) of crack cocaine (given that an ounce of crack cocaine sells for between $1,000 and $1,500). Only if it were considered as crack cocaine would it impact the base offense level, pushing it to 514.2 grams (289.2 grams + 225 grams) and a base offense level of 36. However, it is unclear whether the defendant was selling crack cocaine exclusively or both crack and cocaine hydrochloride.

Michael Hayworth. DEA personnel advise that Mr. Allgood has substantiated that he sold at least **twenty (20) ounces (567 grams) of cocaine base** to defendant James Murray. Allgood was dealing in cocaine base between 1997 and 1998, according to agents. Mr. Hayworth admitted that, during 1998 and 1999, he and the defendant pooled their funds to purchase a total of **between six and seven kilograms of cocaine hydrochloride** (the majority of which they later cooked into cocaine base). Hayworth described traveling to Sacramento, California, with the defendant, where they purchased a kilogram of cocaine hydrochloride for $1,600. He also mentioned having gone to Nashville with the defendant to obtain cocaine hydrochloride.

PSR at 3-5.

At the October 22, 2001 sentencing hearing, the Court found that Murray's criminal history category was I. Murray's total offense level was 36. Murray's offense level of 36, combined with his criminal history category of I and the 60 months for the firearm, resulted in a sentencing range of 248 to 295 months imprisonment. Murray was sentenced to 248 months of imprisonment, to be followed by five (5) years of supervised release.

## IV.    Analysis

Murray's § 2255 motion to vacate contains five claims. Murray raises one claim of insufficient evidence; one claim of insufficient indictment based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny–*Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005); and seven instances of ineffective assistance of counsel. In addition, Murray challenges the application of a sentencing enhancement and the Court's denial of his motion to withdraw his guilty plea; both of these claims were raised on direct appeal. The Court will address each claim separately as raised by Murray.

### A.    Insufficient Evidence

Murray attacks the sufficiency of the evidence supporting his § 924(c) conviction. In conjunction with his insufficient evidence claim, he challenges the validity of the search of the car;

the seizure of the weapon and cash; and the interrogation of him on the scene without being advised of his Miranda rights. Murray also claims he is actually innocent of this conviction because the government lacked evidence to sustain the conviction. Finally, Murray argues the Court lacked jurisdiction to accept his guilty plea on this charge because there was no proof the weapon was involved in interstate commerce.

Initially, the Court observes that Murray has procedurally defaulted these claims as he failed to raise them during his criminal proceedings or direct appeal.[2] This Court is barred from reaching the merits of these claims absent a showing of cause for the tardy challenge and actual prejudice resulting from the alleged error or a showing of actual innocence. Murray's failure to set forth a cause and prejudice argument to excuse his procedural default prevents this exception to the procedural default doctrine from providing him any relief for his default. As to his claim of actual innocence, Murray has failed to satisfy the actual innocence standard set forth in *Murray v. Carrier*, 477 U.S. 478 (1986), which requires him to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496. Nevertheless, the Court will proceed as if these claims are properly before it and explain why Murray is not entitled to § 2255 relief.

Murray's plea of guilty waived these alleged defects unless he can demonstrate his guilty plea was involuntary. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979) (guilty plea waives claims regarding *Miranda* warnings, coerced confessions, perjury, and illegal searches and seizures in a § 2255 proceeding). As

---

[2] Although Murray raised a claim of insufficient evidence on direct appeal in a *pro se* brief, the Sixth Circuit declined to address the claim after they determined the trial court correctly denied his motion to withdraw his guilty plea.

explained below, this Court is bound by the Sixth Circuit's prior determination that Murray entered a knowing and voluntary plea in this case.

The Sixth Circuit previously determined Murray entered a knowing and voluntary guilty plea and concluded the district court did not abuse its discretion in denying his motion to withdraw his guilty plea. Based on those findings the Sixth Circuit declined to address Murray's *pro se* insufficient evidence claim. In its analysis, the Sixth Circuit made the following findings:

> [T]he district judge engaged in a long colloquy with Defendant in accordance with Federal Rule of Criminal Procedure 11(d) to insure that the plea was being voluntarily made. The sum and substance of this long colloquy reveal that all steps possible were taken to insure that Defendant made the plea freely without threat or coercion, that he understood that he had constitutional rights and that by pleading guilty he was forfeiting those rights, that he understood the nature of the charges to which he was pleading, as well as the possible penalties associated with each charge, and that Defendant discussed the charges and penalties with his counsel. At the end of this colloquy, the government stated the factual basis for its case on the record, Defendant admitted that the facts were true, and pleaded guilty....Based upon this long and careful Rule 11(d) colloquy between the court and Defendant, as well as based upon the fact that Defendant had heard the lion's share of the government's case against him, the record does not support a finding that Defendant entered the plea with 'unsure heart and confused mind.'

*United States v. Murray,* 2003 WL 21277340, at * 4-5 (citation omitted). Consequently, the Sixth Circuit has previously determined Murray entered a knowing and voluntary plea and this Court is bound to follow and apply clear Sixth Circuit precedent. Absent a showing of exceptional circumstances, this issue, which was considered on direct appeal, cannot be litigated again in this § 2255 proceeding. For the sake of discussion, assuming the Sixth Circuit had not made a knowing and voluntary plea finding, such a finding would be made by this Court based on the record before it.

Murray pleaded guilty to the § 924(c) charge of possessing a firearm, a loaded Rossi .357

caliber revolver, on or about April 3,1999, during and in relation to the drug trafficking conspiracy alleged in Count One of the indictment.  In the agreed factual basis stated during the rearraignment, Murray  agreed to the following:

> Officer Roger Sanson ...pulled over the defendant...He pulled over the defendant's car for a registration violation, the tag was hanging by one bolt.  Mr. Murray was driving the car.  He was arrested pursuant to an outstanding arrest warrant...At that time, Officer Sanson searched the trunk and found, I think, $11,930 in cash and a loaded .357 Rossi.

(R.T. at 18-19).

A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings.  *United States v. Broce* 488 U.S. 563, 574-75 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (holding that a defendant who has pleaded guilty waives his right to appeal constitutional violations that occurred prior to the guilty plea); *United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002).   The record before the Court in the instant case demonstrates Murray's plea was knowing and voluntary.

At the plea hearing, this Court very carefully reviewed, with Murray, the provisions and effect of his plea; the rights he was waiving; and the maximum penalties he faced under the applicable statute.  This Court read the charges and explained the consequences of Murray's plea as well as the possible length of sentence.  Murray acknowledged, to the Court, that he understood the charges and the consequences of his plea.  Murray stated that he understood the rights he was waiving and  admitted his guilt under oath after being advised of the facts establishing the essential elements of the offenses.  Thus, the Court met the requirements of Fed.R.Crim.P. 11.

As revealed by the rearraignment transcript, Murray entered a knowing and voluntary guilty

plea, thus waiving all the non-jurisdictional defects of which he now complains. The Court complied with the requirements of Fed.R.Crim.P. 11, properly determining that Murray knowingly and voluntarily entered his guilty plea. Thus, in following the requirements of Rule 11, the Court carefully determined Murray understood his applicable constitutional rights; that his plea of guilty was voluntary; that he had a full understanding of the nature of the crime charged and the consequence of his guilty plea; and that a factual basis did indeed exist for the crimes to which he pleaded guilty. *See United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). Therefore, Murray's voluntary and unconditional plea waived Murray's illegal search and seizure claim; his lack of Miranda warnings claim; his failure to prove possession claim; his insufficient evidence claim; his lack of criminal intent claim; and his claim of actual innocence.

Murray also advances a claim that the Court lacked jurisdiction "to render judgement or impose sentence because the jurisdictional entitlement by way of the indictment lacked the subject matter jurisdiction for rendering a sentence." (Court File No. 1, at 11). To successfully challenge the district court's jurisdiction, a defendant who enters a guilty plea must establish that the face of the indictment failed to charge the elements of a federal offense. *See Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988). This Murray has failed to do. Murray presumably contends that the indictment was insufficient to confer jurisdiction upon the district court because it failed to allege the firearm affected interstate commerce. However, to the extent Murray attempts to allege the Court lacked jurisdiction because there was no proof the gun affected interstate commerce, this argument lacks merit as interstate commerce is not an element of carrying a firearm during a drug trafficking offense. *United States v. Smith*, 320 F.3d 647, 655 (6th Cir. 2003) ("Unlike Section 922(g)(1), however, a conviction under 18 U.S.C. § 924(c)(1) does not require proof of an interstate

nexus element."), *cert. denied*, 538 U.S. 1023; *Warwick v. United States*, 2005 WL 2740869 (E.D. Tenn. Oct. 24, 2005) ("Interstate commerce is not an element of carrying a firearm during a drug trafficking offense...").

In summary, Murray's guilty plea admits all averments of fact in the indictment, cures all non-jurisdictional defects, waives all defenses, and relieves the prosecution from the duty of proving any facts.[3] *See Tollett v. Henderson*, 411 U.S. 258, 260-67 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea."). Thus, Murray's guilty plea admitted he knowingly carried a firearm (a loaded Rossi .357 caliber revolver), on April 3, 1999, during and in relation to a drug trafficking crime. Therefore, Murray's insufficient evidence claim, along with the other allegations attacking his § 924(c) conviction, are not cognizable in this § 2255 proceeding.[4] These claims lack merit because Murray pleaded guilty to the § 924(c) charge and expressly admitted the elements of the offense in his plea and in the agreed factual basis stated in support of his guilty plea. A guilty plea,

---

[3] "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady v. United States*, 397 U.S. 742, 757 (1970).

[4] The United States Court of Appeals for the Sixth Circuit has repeatedly and consistently held that the "sufficiency of the evidence to support a conviction may not be collaterally reviewed on a § 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969). A § 2255 motion cannot be used to attack the sufficiency of the evidence by which a defendant is convicted, as that is an issue that can be raised only by direct appeal. *See Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974).

11

voluntarily and knowingly entered, waives all non-jurisdictional defects, including claims of sufficiency of the evidence and all alleged constitutional errors occurring before the plea. *United States v. Broce*, 488 U.S. 563, 574-75 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Thus, Murray's insufficient evidence, illegal search and seizure,[5] *Miranda* violation, and actual innocent claims provide no basis for relief.

Accordingly, Murray's guilty plea prevents this Court from reaching his insufficient evidence claim as well as the other claimed defects as he entered a voluntary, knowing, and intelligent plea of guilty after being advised by competent counsel. Murray's claim of insufficient evidence to support the § 924(c) conviction, along with the other claimed defects, will be **DISMISSED**.

### B.    Insufficiency of Indictment

Murray, relying upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000), challenges the omission of the total quantity of drugs for which he was sentenced from the indictment. In effect, Murray asserts his sentence is unconstitutional because the court imposed a sentence based upon judge-found facts. Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (The Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."), Murray maintains the drug amounts used to enhance his sentence were not identified in the indictment and never admitted by him or proved beyond a reasonable doubt to a

---

[5]       Murray's illegal search and seizure question was addressed and resolved during Murray's criminal proceedings but was not raised on direct appeal.

jury.[6]

As an initial matter, the Court observes *Apprendi* does not apply retroactively to initial

§ 2255 motions, *Goode v. United States,* 39 Fed.Appx. 152, 154 (6th Cir. 2002), and  this claim is

procedurally defaulted as it should have been raised in this Court during Murray's criminal

sentencing proceedings or on direct review since *Apprendi* was decided prior to Murray's criminal

proceedings.  Therefore, Murray must demonstrate cause and prejudice to excuse his procedural

default.  Murray has not submitted any allegations or proof of cause and prejudice to excuse his

procedural default.  Assuming Murray claims counsel was ineffective for failing to raise this

*Apprendi* claim and assuming he could demonstrate deficient performance by counsel, which this

Court does not find, Murray has failed to demonstrate he suffered any prejudice as a result of

counsel not raising this *Apprendi* claim.  Therefore, Murray is procedurally barred from pursuing

this claim.  Nevertheless, Murray is not entitled to § 2255 relief on the merits of this claim as there

was no *Apprendi* error.

The Court also observes that, contrary to the standard identified in *Hill v. Lockhart*, 474 U.S.

52, 58-59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial."), Murray does not make a claim that, but for his counsel's

---

[6]      To the extent Murray attempts to argue *Blakely v. Washington*, 542 U.S. 296
(2004) (invalidated a Washington State criminal sentence because the facts supporting a sentence
enhancement were neither admitted by the defendant nor found by a jury in violation of the Sixth
Amendment right to a jury trial) or *United States v. Booker*, 543 U.S. 220 (2005) (Extending the
holding of *Blakely* to the United States Sentencing Guidelines, the Supreme Court held the
mandatory nature of the federal sentencing guidelines rendered them incompatible with the Sixth
Amendment guarantee to the right to a jury trial) offer him relief, he is simply incorrect.  Neither
*Blakely* nor *Booker* offer Murray any relief as they were decided after his conviction and
sentence became final, and neither case is retroactively applicable on collateral review.

errors and deficient performance he would not have pleaded guilty; would not have signed the plea agreement; and would have insisted on going to trial on all of the charges against him. Murray does not seek to have the entire plea agreement set aside nor does he deny his involvement with the quantity of drugs for which he was sentenced. Rather, Murray seeks to keep and retain all of the benefits of his plea agreement that accrued to him, including his two level reduction for acceptance of responsibility, while at the same time he attempts to repudiate and renege on the part of the plea agreement where he admits he is responsible for more than 50 grams of cocaine base (crack) in the drug trafficking conspiracy count and where he admits he possessed with intent to distribute in excess of 50 grams of a mixture or substance containing cocaine base (crack). Specifically, Murray requests the Court to "resentence accordingly under the proper guidelines." [Court File No.1, at 20]. Consequently, he has not met his burden to excuse his procedural default and thus, the Court is barred from addressing this claim on the merits.

Nevertheless, the Court observes that Murray's sentence did not violate the *Apprendi* principles as Murray admitted the conspiracy involved in excess of 50 grams of cocaine base (crack) and that he possessed with the intent to distribute in excess of 50 grams[7] of a mixture or substance containing cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) which carries a statutory maximum sentence of life imprisonment. Murray's 248 month sentence is well below the statutory maximum sentence. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In the instant case,

_____

[7] During his rearraignment proceeding the government announced, as part of its factual basis that on December 11, 2000, Murray possessed roughly 10 ounces of crack cocaine.

14

Counts One and Three charged the threshold amount of drugs sufficient to support a sentence pursuant to 21 U.S.C. § 841(b)(1)(A), which sets a statutory minimum sentence of ten years[8] and a statutory maximum sentence of life imprisonment. As Murray was not sentenced in excess of a life term, there is no *Apprendi* error. *See United States v. Hough,* 276 F.3d 884, 890-91 (6th Cir. 2002) (precise amount of drugs need not always be submitted to jury as long as the statutory threshold amount to support the sentence is proven).

Count One of the superseding indictment charged Murray with conspiracy to distribute in excess of 50 grams of cocaine base (crack) and in Count Three he was charged with possessing with the intent to distribute more than 50 grams of a mixture or substance containing cocaine base ("crack"). At re-arraignment, the Government informed Murray and the Court that Murray's guilty plea, based on the amount of cocaine base ("crack") involved in the conspiracy and distribution counts and the 924(c) count, would carry a minimum imprisonment term of fifteen years and a maximum term of life [R.T. at 14]. The government specified that Murray was in possession of roughly 10 ounces of crack cocaine on December 11, 2000, when he was arrested in Manchester, Tennessee and that Michael Hayworth, Tory Campbell, Willie Allgood, and other witnesses all received fairly large quantities of crack cocaine from Murray–ounce quantities or more. The statutory source for the minimum and maximum terms of imprisonment is 21 U.S.C. § 841(b)(1)(B). The statutes Murray was charged with violating, 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846, along with his 924(c) Count provide a sentence of not less than fifteen years or more than life. Murray's sentence of 248 months fell within the statutory range and does not violate *Apprendi* as

---

[8] During his rearraignment proceeding, the Court advised Murray that the 924(c) charged raised his mandatory-minimum sentence to fifteen years (Rearraignment Transcript, "R.T." at 14).

it is well short of the life term described by the Government at rearraignment under § 841(b)(1)(B). Therefore, Murray's criminal proceeding did not involve an *Apprendi* error because his sentence did not exceed the statutory maximum sentence permitted by statute. Thus, there is no *Apprendi* error in the present case because Murray was sentenced within the confines identified in 21 U.S.C. § 841(b)(1)(B) to which he pleaded guilty.

In cases where a defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction, there is no *Apprendi* error. *Harris v. United States*, 536 U.S. 545, 565 (2002) ("Whether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries-and without contradicting *Apprendi*").

Applying the reasoning of *Harris* to Murray's § 2255 petition, it becomes abundantly obvious *Apprendi* has no relevance to Murray' indictment, guilty plea, and sentence. Even though the indictment charged Murray with conspiracy to distribute in excess of 50 grams of cocaine base ("crack") and possession with intent to distribute 50 grams of a mixture or substance containing cocaine base ("crack"), and the Government stated at re-arraignment Murray would be sentenced according to § 841(b)(1)(B) in that he was subject to a mandatory-minimum sentence of imprisonment of at least 15 years not to exceed life, the Court's imposition of a sentence based on the increased quantity of two kilograms of cocaine base still imposed a sentence below the statutory

maximum sentence of life in § 841(b)(1)(B). By its terms, *Apprendi* only applies when a sentence exceeds the "prescribed statutory maximum," *Apprendi*, 530 U.S. at 490. Murray's 248-month sentence did not exceed the statutory maximum.[9] *See United States v. Calloway*, 89 Fed.Appx. 983 (6th Cir. 2004) ("Because Calloway's sentence (just under twenty-two years) fell well below the statutory maximum for the crime to which he pleaded guilty (life in prison), no *Apprendi* violation occurred").

Accordingly, Murray is not entitled to § 2255 relief on his insufficient indictment *Apprendi* allegation.

### C.    Ineffective Assistance of Counsel

Murray submits seven instances of ineffective assistance of counsel which the Court will address separately as sub-claims under the claim of ineffective assistance of counsel. To establish ineffective assistance of counsel Murray must demonstrate, as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), two essential elements: (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of

---

[9]    Murray received a total sentence of 248 months which consisted of 188 months on Counts One and Three, to be served concurrently and a consecutive 60 month sentence on Count Two.

reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

        1.      Failure to Present Adversarial Defense

Murray claims counsel failed to present an adversarial type defense that put the government to the task of meeting their burden of proof beyond a reasonable doubt. This claim is patently frivolous. Initially the Court observes Murray pleaded guilty, thus an adversarial type of defense was not necessary. Nevertheless, the record reflects counsel did indeed present an "adversarial" defense or challenge to the alleged constitutional issues.

First, Murray's retained counsel filed a motion to suppress and vigorously examined and cross-examined the witnesses during the hearing on the motion. The motion to suppress was denied and thereafter, the Court appointed new counsel who filed a second motion to suppress with a supporting memorandum which was denied by the Court. The trial began on July 11, 2001, and the government presented the testimony of two witnesses, both of whom testified they had been involved in drug trafficking activities with Murray. Murray's counsel throughly cross-examined each witness and after hearing the testimony of these two witnesses, Murray elected to change his plea to guilty.

Second, during the plea colloquy Murray acknowledged that his counsel's representation was satisfactory [R.T. at 6]. In addition, the Court observes that Murray entered a voluntary guilty plea, thus waiving his right to defend the case or conduct an "adversarial challenge." Thus, once he pleaded guilty counsel was not required to present an adversarial type defense as to his guilt or innocence.

Third, to the extent he claims counsel failed to present an adversarial type defense at

sentencing, Murray is mistaken. During the sentencing proceedings counsel objected to the quantity of drugs for which Murray was responsible; the failure to award him a two-level decrease for acceptance of responsibility; and the increase of his offense level by two levels for obstruction of justice. Due to counsel's objection to the quantity of drugs for which the pre-sentence reflected Murray was responsible, the government put on a witness, who was throughly cross-examined by Murray's counsel. In addition, counsel argued and received a two-level decrease for acceptance of responsibility even though Murray did not enter a guilty plea until after the government had presented the testimony of two witnesses during trial and had attempted to withdraw his guilty plea.

Lastly, counsel forcefully argued against the obstruction of justice enhancement. Although he lost the argument, Murray has not demonstrated inadequate performance nor any resulting prejudice. Counsel was very proficient in obtaining the two level decrease for acceptance of responsibility. Counsel's failure to win every objection does not equate to ineffective assistance of counsel. Murray has not demonstrated that counsel's conduct so undermined the proper functioning of the adversarial process that the sentencing cannot be relied upon as having produced a just result. *Strickland*, 455 U.S. at 686. Murray offers no suggestions as to how his counsel should have performed during his sentencing proceeding or any evidence that the Court would have sentenced him to less time. Thus, Murray has neither shown his counsel's performance to be inadequate nor any resulting prejudice. Accordingly, Murray is not entitled to § 2255 relief on his claim that counsel failed to present an adversarial defense.

2.      Failed to Challenge § 924(c) Count

Murray claims counsel failed to attack the second count of the indictment which charged him with violating 18 U.S.C. § 924(c)–knowingly carrying a firearm during and in relation to a drug

trafficking offense. Murray is claiming counsel was ineffective for failing to "challenge the Title 18 U.S.C. § 924 count and have it dismissed under the plea agreement." (Court File No. 1, at 21). However, there was no plea agreement. Murray had the choice of proceeding with his trial or pleading guilty to all of the charges. Murray chose to enter a guilty plea to the three-count indictment, thus waiving any challenge he may have had to the § 924(c) count of the indictment.

Murray assails his counsel's performance in failing to negotiate a plea agreement dismissing the § 924(c) count. Murray invoked his right to trial and only after he was apparently convinced that he was going to get convicted, did he decide to plead guilty. Murray made this decision during trial, thus, there was no plea agreement. Murray's decision to plead guilty to all charges without the benefit of a plea agreement does not translate into deficient performance on the part of his attorney. In addition, he has not demonstrated that had counsel attempted to have the government drop the § 924(c) count that they would have acquiesced. There is no evidence that a plea agreement was ever offered or available to him. Indeed, the government denies ever offering a plea agreement to Murray. Consequently, Murray has neither shown his counsel's performance to be inadequate nor any resulting prejudice. In addition, Murray's voluntary guilty plea waives his claim that counsel failed to challenge the § 924(c) count and have it dismissed under the plea agreement; thus, the claim will be **DENIED**.

### 3. Withdrawal of Not Guilty Plea

Murray claims counsel failed to rendered competent legal advice "concerning the withdrawal of the original Not Guilty plea, and the entering of the Guilty Plea without gaining any plea agreement benefits for the plea." (Court File No. 1, at 21). As discussed above, Murray's voluntary plea demonstrates he was fully aware of the consequences of pleading guilty before he entered his

guilty plea. Moreover, the government affirmatively states that it never offered a plea agreement in Murray's case (Court File No. 5, at 13).

In addition, Murray has not identified any improper advice concerning the withdrawal of his not guilty plea and this Court and the Sixth Circuit have previously determined Murray's plea was knowing and voluntary. Thus, Murray has not demonstrated counsel rendered deficient advice. Moreover, Murray has not demonstrated prejudice. Murray received a benefit from pleading guilty when counsel argued for and the Court awarded him a two-level downward departure for acceptance of responsibility. This departure reduced his offense level from a 38 to a 36, reducing his guidelines at least forty-seven months. Therefore, Murray received a benefit from pleading guilty.

In sum, Murray has failed to demonstrate counsel rendered unprofessional legal advice or that he suffered any prejudice when counsel advised him concerning the withdrawal of his "not guilty plea" and entering a plea of guilty without the benefit of a plea agreement. This claim will be **DENIED**.

### 4. Failure to Obtain Withdrawal of Guilty Plea

Murray claims counsel was ineffective for failing to argue his guilty plea should be set aside because it was not a knowing, intelligent, and voluntary plea. Murray claims counsel coerced him into pleading guilty. The record before the Court belies this claim.

Although counsel did not specifically state Murray's guilty plea was involuntary, his motion portrayed such as a ground for withdrawing the guilty plea with language stating Murray was "not adequately apprised of the nature of the charges against him nor of the legal consequences" to which he would be exposed (Crim. Court File No. 65). Moreover, the Court resolved the motion on the

basis that Murray was claiming he did not enter a knowing, intelligent, and voluntary plea because he did not know the elements of the offenses to which he pleaded or the full sentencing prospects. In addition, on direct appeal, the appellate court concluded that "[b]ased upon this long and careful Rule 11(d) colloquy between the court and Defendant, as well as based upon the fact that Defendant had heard the lion's share of the government's case against him, the record does not support a finding that Defendant entered the plea with 'unsure heart and confused mind.'" *United States v. Murray*, 66 Fed. Appx. 600, 605 (6th Cir. 2003), (unpublished table decision). Furthermore, this Court has previously concluded, in this memorandum opinion, that Murray's guilty plea was knowing, intelligent, and voluntary. In addition, when disposing of Murray's motion to withdraw his guilty plea the Court concluded he could not "be heard to say that he did not have full knowledge of what he was doing[,]" when he entered his guilty plea as the Court throughly advised him on his sentencing prospects and the elements of the offenses to which he pled. (Crim. Court File No. 69, at 3-4).

In sum, Murray has not demonstrated that counsel was deficient or that he was harmed when counsel failed to specifically argue the withdrawal of his guilty plea was unknowing, unintelligent, and involuntary. Accordingly, he will be **DENIED** relief on this claim.

The second tier of Murray's claim–that counsel coerced his guilty plea–is contradicted by the record. After being throughly advised of the consequences of taking the oath and the importance of telling the truth during the rearraignment proceedings, the Court asked Murray if anyone threatened him in any way to get him to plead guilty or whether anyone from the government or anyone else forced him to plead guilty to which he responded "no" to both questions [R.T., at 2, 8-9]. This claim is without merit. *See United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)

("[W]e recognize that a defendant who expressly represents in open court that his guilty plea is voluntary "may not ordinarily" repudiate his statements to the sentencing judge.") On the facts of this case, Murray has not demonstrated he was coerced into entering a plea of guilty.

5.      Actual Innocence

Murray claims counsel was ineffective for failing to assert he was actually innocent of the § 924(c) count because that charge lacked a jurisdictional basis. As the Court previously concluded in this memorandum opinion, the Court had subject matter jurisdiction on the § 924(c) count of the indictment so counsel cannot be deemed ineffective for failing to argue a frivolous issue.[10]

The indictment charged Murray knowingly carried a firearm during and in relation to a drug trafficking crime, the conspiracy charged in Count One in violation of 18 U.S.C. § 924(c). The indictment was sufficient to charge a crime under § 924(c). An indictment suffers from a jurisdictional defect only when it charges no crime at all. *See McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001). Accordingly, the Court had subject matter jurisdiction, so counsel was not ineffective for failing to argue Murray was actually innocent of the § 924(c) count because the Court lacked jurisdiction. This claim will be **DENIED**.

6.      Failure to Obtain Deposition of Witness

Murray claims counsel was deficient for failing "to obtain a deposition prior to trial from the Somalian taxi-driver who was a witness surrounding contradictions in the original statement and his

---

[10]      The Court previously concluded Murray's claim that the Court lacked jurisdiction on the § 924(c) count because there was no proof the weapon affected interstate commerce was frivolous as an interstate nexus is not an element of carrying a firearm during a drug trafficking offense. *United States v. Smith*, 320 F.3d 647, 655 (6th Cir. 2003) ("Unlike Section 922(g)(1), however, a conviction under 18 U.S.C. § 924(c)(1) does not require proof of an interstate nexus element.")

change of story over the alleged 911 call he supposedly made." (Court File No. 1, at 22). Murray has failed to identify the "surrounding contradictions in the original statement" and how he changed his story. Murray makes no specific factual allegations with respect to what a deposition would have revealed or how counsel's alleged omission prejudiced the outcome of the proceeding. Thus, he has only presented a vague allegation which fails to demonstrate counsel's conduct was unreasonable under professional standards.

Moreover, Murray's original counsel conducted a suppression hearing and questioned the Somalian taxi-driver. Murray's appointed counsel had no need to depose him because he could read his testimony contained in the suppression hearing transcript. Even accepting there were alleged contradictions, petitioner has failed to demonstrate how these facts would have altered the outcome of the case. Regardless of the reason the taxi-driver had for calling 911, a call was placed to 911, the officers arrived and this Court found no constitutional violation or basis to suppress the drugs seized from Murray. Murray has not identified the existence of any evidence that might have been helpful to his case or demonstrated that the failure of trial counsel to depose the taxi-driver prejudiced the outcome of the proceedings.[11] Accordingly, Murray has not demonstrated counsel was deficient or that he was harmed by counsel's failure to depose the taxi-driver. Accordingly, this claim will be **DENIED**.

---

[11] Murray's original counsel filed a motion to suppress along with her affidavit claiming the taxi driver told her that he did not say anything about Murray having a weapon; and the transcript from dispatch, which did not reflect any claim about a weapon, was filed with counsel's affidavit. However, the taxi-driver also testified at the suppression hearing, and he was adamant that he was scared and said he thought Murray may have had a weapon because he kept checking his waistband area (Crim. File No. 14, Suppression Transcript, at 38-45)

### 7. Ineffectiveness of Appellate Counsel

Murray claims counsel was ineffective on appeal when he failed to argue the evidence was insufficient to sustain the § 924(c) conviction. The Court observes that Murray filed a *pro se* challenge to the sufficiency of the evidence regarding the § 924(c) conviction which the Sixth Circuit refused to address in light of their conclusion that the district court did not abuse its discretion in denying his motion to withdraw his guilty plea. As previously determined, the evidence supported the conviction and there was no error as the failure of counsel to pursue frivolous claims cannot constitute ineffective assistance of counsel. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990). Accordingly, counsel was not ineffective for failing to challenge the sufficiency of the evidence of the § 924(c) conviction.

### D. Direct Review Claims

Petitioner's last two claims–erroneous denial of motion to withdraw guilty plea and erroneous application of obstruction of justice enhancement–were raised and resolved on direct review. Absent exceptional circumstances, such as an intervening change in the case law, which is not present in the instant case, Murray may not use his § 2255 motion to relitigate issues previously resolved on direct appeal. *See Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). In this case, the appellate court concluded the district court did not abuse its discretion in denying Murray's motion to withdraw his guilty plea and in determining that Murray's testimony was "materially perjurious," thus providing a sufficient basis for applying the two-level enhancement for obstruction of justice under the Sentencing Guidelines. Murray has not provided any justification to relitigate these two issues. Accordingly, he is not entitled to § 2255 relief on these claims.

**V.     Conclusion**

For the reasons set forth above, the Court concludes Murray is not entitled to any relief under 28 U.S.C. § 2255 as his conviction and sentence are not in violation of the Constitution or laws of the United States.  A separate judgment will enter **DENYING** Murray's § 2255 motion [Court File No. 1].

An appropriate judgment will enter.


_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE